**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION No. 04-10572-MLW

| | |
|---|---|
| FAIR HOUSING CENTER OF<br>GREATER BOSTON, INC., | )<br>)<br>) |
| Plaintiff | )<br>) |
| v. | )<br>)<br>) |
| BOSTON APARTMENT RENTALS and<br>A & S REALTY and<br>APARTMENT DEPOT and<br>MARK ROOS REALTY, | )<br>)<br>)<br>)<br>) |
| Defendants | )<br>) |

**MEMORANDUM OF REASONS IN SUPPORT OF**
***DEFENDANT, BOSTON APARTMENT RENTALS', MOTION TO DISMISS ALL***
***COUNTS AS AGAINST DEFENDANT, BOSTON APARTMENT RENTALS***

## I.    INTRODUCTION

The Defendant, Boston Apartment Rentals ("Defendant"), is an interactive service

provider that hosts a web site where landlords and real estate professionals can post and

publish advertisements for available properties.    The *gravamen* of the Complaint is

that the Defendant violates (1) the federal Fair Housing Act; (2) the Massachusetts Anti-

Discrimination Act; (3) the Massachusetts Consumer Protection Act; and is potentially

liable in tort where third party users of the web site post advertisements on the web

site that are allegedly discriminatory toward certain protected classes of people.

The Defendant asserts that all of the Plaintiff's causes of action are precluded as a matter

of law under the operative provisions of the federal Communications Decency Act;

that the Defendant is thus immune from liability; and that in light of this statutory

immunity, the Plaintiff, Fair Housing Center of Greater Boston, Inc. ("Plaintiff") has failed to assert any claim for which relief can be granted. Accordingly, dismissal of the Plaintiff's Complaint, with prejudice, is the proper procedural remedy under Rule 12(b)(6) of the Rules of Civil Procedure.

## II.    SPECIFIC ALLEGATIONS OF THE PLAINTIFF

On or about March 23, 2004, the Plaintiff filed its Complaint in this action. (See Compl.: Ex. A.) Therein, the Plaintiff alleges that the Defendant has "made, printed, or published, or caused to be made, printed, or published[,] and, upon information and belief, continue[s] to make, print, or publish or case to make, print, or publish[,] rental advertisements" on its website.    The Plaintiff further contends that these actions constitute violations of (1) Title 42, Section 3604(c) of the United States Code (the so-termed "Fair Housing Act"); (2) Chapter 151B, Sections 4(7B) and 4(10) of the Massachusetts General Laws (the so-termed "Massachusetts Anti-Discrimination Law"); (3) Chapter 93A of the Massachusetts General Laws (the so-termed "Consumer Protection Law"); and (4) the duty of due care under common law negligence principles. See Ex. 1 at ¶¶ 11, 31, 36, 40, and 47.

## III.    STANDARD OF REVIEW

The Court may grant the instant Rule 12(b)(6) Motion if "it appears beyond doubt that the [P]laintiff can prove no set of facts in support of [its] claim [that] would entitle [it] to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957). In considering the instant Motion, the Court is limited to the allegations in the Plaintiff's Complaint. See Nicholson v. Moran, 961 F.2d 996, 998 (1st Cir. 1992). The Court must accept all facts pleaded as

true, view them in the light most favorable to the Plaintiff, and draw any reasonable inference from them in the Plaintiff's favor. See Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992).

## IV.    ARGUMENT

### 1.   Because the Communications Decency Act provides that the Defendant is federally immune from all causes of action as pleaded, the Plaintiff's *Complaint* fails to state a claim upon which relief can be granted.

The clear and unambiguous language of the Communications Decency Act ("CDA") provides absolute immunity to the Defendant and thus precludes the causes of action pleaded by the Plaintiff.

No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. 47 U.S.C. § 230(c)(1) (2004).[1]   No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section. 47 U.S.C. § 230(e)(3) (2004).

Section 230 of the CDA ("Section 230") creates federal immunity for any cause of action that would make an interactive computer service provider otherwise liable for information originating with a third-party user of the service. Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir.1997). "Specifically, [Section] 230 *precludes courts from entertaining claims* that would place a computer service provider in a *publisher's role.*"

---

[1]  The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C. § 230(f)(2) (2004). The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service. 47 U.S.C. § 230(f)(3) (2004).

Id. (emphasis supplied). Importantly, there is no legal distinction between publishers and distributors, as a theory based on distributor liability is "merely a subset, or a species, of publisher liability, and is therefore also foreclosed by [Section] 230." Id., 129 F.3d 327 at 332. "Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding *whether to publish, withdraw, postpone[,] or alter content* — are *barred*." Id. at 330. (emphasis supplied) Significantly, a website has been categorized as one type of interactive computer service. Batzel v. Smith, 333 F.3d 1018, 1030 n. 16 (9th Cir. 2003) (citing Carafano v. Metrosplash.com Inc., 207 F.Supp.2d 1055, 1065-6 (C.D.Cal. 2002) (add'l citations omitted).

In Zeran, the seminal case on Section 230 immunity, the plaintiff sued America Online, Inc. ("AOL"), a well-known and popular interactive service provider, when a third-party user of AOL posted several allegedly defamatory messages on an AOL bulletin board. The plaintiff contended that AOL was liable for damages arising from the postings under a publisher liability theory grounded in common law defamation. The Zeran court aptly observed that because "[i]nteractive computer services have millions of users[,] . . . [t]he amount of information communicated via [such] services is therefore staggering." In light of this, that court concluded that "[t]he specter of tort liability in an area of such prolific speech would have an obvious chilling effect" and that "[i]t would be impossible for service providers to screen each of their millions of postings for possible problems." The court reasoned that if service providers were faced with such potential liability, such providers "might choose to severely restrict the number and type of message posted." Because of the obvious detrimental effect such a scheme would

have on freedom of speech, as guaranteed by the First Amendment to the Constitution of the United States, the Zeran court concluded that, "Congress [had] considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect."

The allegations at bar are very similar to those of Zeran. As set forth in the Complaint, the Defendant operates a website on which landlords and real estate rental agents can post information advertising the attributes of their available properties. As such, the Defendant is an interactive service provider as contemplated and defined by Section 230 of the CDA. Also as such, the persons and entities that post advertisements on the Defendant's website are information content providers, as contemplated and defined by Section 230. Moreover, the Plaintiff's Complaint is devoid of any allegations that the Defendant is an information content provider, or that the Defendant creates or develops any of the text supplied by the information content providers. Accordingly, it is beyond dispute that the Defendant is an entity of the same type as a bulletin board operated by AOL. Consequently, the Defendant can only be reasonably identified as an interactive service provider, and not an information content provider.

In its Complaint, the Plaintiff describes the Defendant as participating in the acts of a publisher, namely "solicit[ing], review[ing], accept[ing], and publish[ing] rental advertisements on its website[.]" See Ex. 1 at ¶ 7. The Plaintiff's chosen terminology is strikingly similar to the "publisher's traditional editorial functions" as set out by the Zeran court. Based on the plain language of its Complaint, then, all of the Plaintiff's claims as against the Defendant are predicated on a theory of publisher liability, and are thus proscribed by Section 230.

By way of analogy, the Defendant, and all other similarly situated service providers, are modern day versions of a wooden post located in the square of a colonial village, upon which the citizenry tack notices of local interest. In the internet age, however, the pole would necessarily extend into the stratosphere and beyond. Under the Defendant's theory of liability, the law would require the pole's owner to climb up and down the pole, while diligently and perpetually monitoring the notices for any and all suspected legal infirmities. Acknowledging the Sisyphean and logistically nightmarish applications of this theory in present-day cyberspace, Congress, in enacting Section 230, chose, wisely and practically, to limit liability to the "content providers" of electronically posted information.

For the foregoing reasons, this Honorable Court should find that, as a matter of law, the Plaintiff has failed to state a claim upon which relief can be granted; allow the Defendant's Motion; and dismiss all counts as against the Defendant, with prejudice.

**2. This Honorable Court should adopt the holdings and rationales of the Courts of Appeal of five Federal Circuits and explicitly rule that Section 230 renders the Defendant and all other interactive service providers federally immune from liability for information posted by third-party users of such services.**

Section 230 creates federal immunity to any cause of action that would make interactive computer service providers liable for information originating with a third-party user of the service. Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997). Congress clearly enacted [Section] 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions. Ben Ezra v. America Online Inc., 206 F.3d 980, 986 (10th Cir. 2000). By its terms, [Section] 230 provides immunity to [an interactive service provider] as a publisher

6

or speaker of information originating from another information content provider. Green v. America Online, 318 F.3d 465, 471 (3rd Cir. 2003). There is no civil liability running to a service provider when a service provider refrains from filtering or censoring the information on its site. Doe v. GTE Corp., 347 F.3d 655, 659 (7th Cir. 2003). This approach has the support of four circuits. See Id. No appellate decision is to the contrary. See Id.

A service provider is immune from liability under Section 230 when a third person or entity that created or developed the information in question furnished it to the provider under circumstances in which a reasonable person in the service provider's position would conclude that the information was provided for publication on the Internet or other interactive service. Batzel v. Smith, 333 F.3d 1018, 1034 (9th Cir. 2003). Because "the statute repeatedly refers to 'the Internet and other interactive computer services,' . . . the statutory immunity [it affords] extends beyond the Internet itself." Id., 333 F.3d 1018 at 1030.

As illustrated by the cited case law, *supra*, five federal circuits have held that Section 230 of the CDA immunizes interactive service providers, such as the Defendant, from liability arising out of third-party users of the providers' services. In Ben Ezra, the Court of Appeals for the Tenth Circuit held that the defendant, AOL, was immune from liability under Section 230 where the plaintiff asserted claims predicated on negligence and defamation. That case arose out of the posting of inaccurate quotations for stocks and securities, the original sources of which were two national stock exchanges and an over-the-counter market. In Green, the Court of Appeals for the Third Circuit held that the defendant, AOL, was immune from liability under Section 230 where the plaintiff

asserted a negligence claim. That case arose out of the transmission of allegedly harmful messages through one of AOL's chat rooms.

In Batzel, the Court of Appeals for the Ninth Circuit held that the defendant individual who forwarded to an electronic newsletter the text of an allegedly defamatory e-mail message that had, in turn, been sent to him, would be immune from liability under Section 230 (as to the originator of the e-mail) if a reasonable person in the defendant's circumstances would have concluded that the originator intended the e-mail message for electronic publication. In Doc, the Court of Appeals for the Seventh Circuit held that the defendant website host was immune from liability in tort under Section 230 where it allowed a third-party user to broadcast over its site a surreptitiously intercepted videotape.

As evidenced by the clear trend among the five Circuits that have so far addressed the immunizing effect of Section 230 of the CDA, the weight of authority leans toward interpreting Section 230 as immunizing interactive service providers, such as the Defendant, from all liability for publishing information provided by third-party users of their service. Only the Ninth Circuit has interpreted the federal statute to include consideration of whether the content provider intended the electronic publication. Regardless, such consideration would not lie in the instant case because the Plaintiff's Complaint does not contain any allegations that the Plaintiff did not intend the information at issue for publication.

The Doc court posits many helpful analogies in explaining the myriad problems that a contrary holding would generate. That court described a web site host, such as the Defendant, as an intermediary, like a delivery service or a telephone company, which is

8

"normally indifferent to the content of what it transmits." The court went on to reference the untenable nature of holding liable, *e.g.*, newspapers that contain advertisements for escort services or the Verizon telephone company, which unknowingly furnishes pagers to drug dealers. By extension, the logistical barriers to requiring service providers to police millions upon millions of postings on web sites and other electronic fora are plain to see and simply impossible to overcome.

Although the underlying claims in most of the circuit court cases sounded in tort, the rationale behind immunizing service providers from all theories of liability can and should be consistently applied to other theories, including allegations concerning the Fair Housing Act, the Anti-Discrimination Law, and the Consumer Protection Law. Indeed, because Section 230 specifically exempts from its scope "any law pertaining to intellectual property" and "the Electronic Communications Privacy Act," see 47 U.S.C. §§ 230(e)(2) and (e)(4) (2004), one could logically presume that the immunity provision extends to all causes of action not specifically exempted.

The fact that most appellate level cases have involved defamation and negligence claims is not by the design or language of the statute, but rather merely a function of happenstance. In Kathleen R. v. City of Livermore, the Court of Appeal, First District, Division 4, of California held that a defendant was "immune from all of [the plaintiff's] state law claims[,]" rejecting the plaintiff's proposition that Section 230 applied only to tort claims, and including within the scope of immunity the plaintiff's "taxpayer cause of action". Kathleen R. v. City of Livermore, 87 Cal. App. 4th 684, 697-8 ( 2001). Notably, the court concluded that, "[t]axpayer actions and claims for declaratory and injunctive relief are no less causes of action than tort claims for damages, and thus fall squarely

within the section 230(c)(3) prohibition." Id., 87 Cal. App. 4th 684 at 698.  Importantly, the Kathleen R. court also held that Section 230 immunity applied not only to that plaintiff's claim for damages, but also to her claims for declaratory and injunctive relief. In both these regards, the court reasoned that the absence of any such limiting language in the body of the statute did not preclude Section 230 immunity from encompassing such claims.

For the foregoing reasons, this Honorable Court should rule in concert with the Third, Fourth, Seventh, Ninth, and Tenth Circuit Courts of Appeals; allow the Defendant's Motion; and dismiss all counts as against the Defendant, with prejudice.

## V.    CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, the Defendant, Boston Apartment Rentals, respectfully requests this Honorable Court to allow its Motion and dismiss all counts as against the Defendant, with prejudice.

Respectfully submitted,

The Defendant, Boston Apartment Rentals,
By its Attorneys,

Michael Xavier, BBO# 644844
Michael T. Lennon, BBO# 648186 (of counsel)
4 Longfellow Place, 35th Floor
Boston, MA 02114
Tel: (617) 227-2800
Fax: (617) 973-1562

Dated:  April 15, 2004