UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAIR HOUSING CENTER OF<br>GREATER BOSTON, INC.,<br><br>           Plaintiff,<br><br>   v.<br><br>BOSTON APARTMENT RENTALS,<br>A&S REALTY, APARTMENT DEPOT,<br>and MARK ROOS REALTY,<br><br>           Defendants. | C.A. No. 04-10572-MLW |

**MEMORANDUM IN OPPOSITION TO**
**APARTMENT DEPOT'S MOTION TO DISMISS**

| | |
|---|---|
| Nadine M. Cohen (BBO # 090040)<br>The Lawyers Committee for Civil Rights<br>  Under the Law of the Boston Bar Association<br>294 Washington Street<br>Suite 940<br>Boston, Massachusetts 02108<br>(617) 482-1145 | Irene C. Freidel (BBO #559051)<br>Andrew C. Glass (BBO #638362)<br>Aimée E. Bierman (BBO #640385)<br>Jason N. Golub (BBO# pending)<br>KIRKPATRICK & LOCKHART LLP<br>75 State Street<br>Boston, Massachusetts 02109<br>(617) 261-3100 |
| May 27, 2004 | Attorneys for plaintiff Fair Housing Center of Greater Boston, Inc. |

Plaintiff Fair Housing Center of Greater Boston, Inc. (the "Fair Housing Center") respectfully submits this memorandum in opposition to defendant Apartment Depot's Motion to Dismiss Plaintiff's Complaint (the "Motion"). Because the allegations of the Complaint are more than sufficient to establish the Fair Housing Center's standing to seek relief from defendants under the Fair Housing Act and the Fair Housing Center has otherwise properly pled its claims against Apartment Depot, the Motion should be denied.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The Fair Housing Center filed this action against Apartment Depot and three other entities[1] responsible for developing and/or creating Internet rental housing advertisements that unlawfully express a preference or limitation for housing based on familial status, children, receipt of a rental subsidy, and source of income. These preferences and limitations have a disparate impact on members of protected classes based on race, color, or national origin.

In its Complaint, the Fair Housing Center asserts claims against defendants pursuant to the Fair Housing Act, 42 U.S.C. § 3604(c), the Massachusetts Anti-Discrimination Act, Mass. Gen. Laws ch. 151B, the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A, and common law negligence.

Apartment Depot has moved to dismiss all counts of the Complaint primarily on the grounds that (1) the Fair Housing Center lacks standing to pursue its claims, (2) the Fair Housing Center's claims run afoul of Apartment Depot's rights under the First Amendment to the U.S. Constitution, and (3) the Fair Housing Center has failed to state claim of common law negligence. Because the allegations of the Complaint are more than sufficient to establish the

---

[1]   These other entities are defendants A&S Realty, Boston Apartment Rentals, and Mark Roos Realty (collectively, with Apartment Depot, "defendants").

Fair Housing Center's standing to seek relief, as well as to establish the bases for each of the Fair Housing Center's claims, the Court should deny Apartment Depot's Motion in its entirety.  To the extent that the Court deems any of the Complaint's allegations deficient, the Fair Housing Center requests an opportunity to amend the Complaint.

First, that the Fair Housing Center has standing on its own behalf to pursue its claims against Apartment Depot and the other defendants is expressly resolved by the U.S. Supreme Court's decision in Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982).  Where, as here, the Fair Housing Center has alleged that its mission has been frustrated by Apartment Depot's discriminatory actions, and the Fair Housing Center has had to divert and continues to divert significant resources to identify and counteract Apartment Depot's practices (Complaint at para. 6), the Fair Housing Center has satisfied the Article III test for standing as discussed in Havens.

Second, the Fair Housing Center's claims do not infringe upon Apartment Depot's rights under the First Amendment.  As discussed below, it is well established that the First Amendment does not protect advertising that is discriminatory within the meaning of the Fair Housing Act.  In fact, courts have repeatedly rejected precisely the First Amendment arguments raised by Apartment Depot in its Motion to contest liability under the Fair Housing Act.

Last, because the Fair Housing Center has alleged each element of a claim of negligence – namely, the existence of a duty, a breach of that duty, causation and damages --, the allegations of the Complaint are sufficient to state a negligence claim against Apartment Depot.

For these reasons and the reasons stated below, Apartment Depot's Motion should be denied in its entirety.

II.   **SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT PERTAINING TO APARTMENT DEPOT**

   A.   <u>**Summary Of Factual Allegations**</u>

The Fair Housing Center is a private, non-profit fair housing organization dedicated to promoting equal housing opportunities for all people in Boston and the Greater Boston area. Compl. at para. 4. Its constituents include, but are not limited to, persons seeking rental housing through advertisements posted on Internet websites, including www.bostonapartments.com/aptdepot.htm, a website operated by Apartment Depot. <u>Id.</u>

The Fair Housing Center devotes resources to ensuring that all persons have equal opportunity and access to housing, Compl. at para. 5, and identifies and takes action to eliminate discriminatory housing practices through education, counseling, investigation, and enforcement. <u>Id.</u> The Fair Housing Center's mission has been frustrated by Apartment Depot's discriminatory advertising that has had the effect of sanctioning discrimination in housing. <u>Id.</u> at para. 6. The Fair Housing Center has had to divert, and continues to divert, significant resources from its usual activities to identify and counteract defendants', including Apartment Depot's, discriminatory advertising practices. <u>Id.</u>

Apartment Depot posts and publishes rental advertisements on its website www.bostonapartments.com/aptdepot.htm that express preferences or limitations that discriminate against persons with rental subsidies and families with children. A review of this website in June-August 2003 revealed advertisements that include, but are not limited to, the following discriminatory statements: "apartment is not deleaded" and "professional building." Complaint at paras. 18-19.

A follow-up review in December 2003-January 2004 revealed that Apartment Depot continues to post advertisements at www.bostonapartments.com/aptdepot.htm that express

- 3 -

preferences or limitations that discriminate against persons with rental subsidies and families with children. Examples include, but are not limited to, the following: "apartment is not deleaded;" "only first month required (dependant [sic] on credit) security;" "no security deposit required with good credit and stable employment;" "this is a professional building;" and "professional inquiries only." Complaint at para. 20.

Apartment Depot's advertisements restrict the housing choices and opportunities for families with children and persons with rental subsidies. Compl. at para. 25. Because a disproportionate number of persons with rental subsidies and families with children are people of color, these advertisements have had the effect of discriminating against people based on race, color, and national origin. Id.

### B. Summary Of Legal Claims

The Fair Housing Center alleges that Apartment Depot's advertisements violate Section 3604(c) of the Fair Housing Act, which makes it unlawful:

> to make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c). In violation of the Fair Housing Act, Apartment Depot is responsible for placing on its website rental advertisements that indicate a preference or limitation, or that discriminate, based on familial status and that have had a disparate impact on members of protected classes based on race, color, or national origin. Compl. at paras. 18-20; 30-31.

The Fair Housing Center further alleges that Apartment Depot's advertisements violate the Massachusetts Anti-Discrimination Law, Mass. Gen. Laws ch. 151B §§ 4(7B) & 4(10). Chapter 151B § 4(7B) makes it unlawful:

> to make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a multiple dwelling, contiguously located, publicly assisted or other covered housing accommodations that indicates any preference, limitation, or discrimination based on race, color, religion, sex, sexual orientation which shall not include persons whose sexual orientation involves minor children as the sex object, national origin, genetic information, ancestry, children, marital status, public assistance recipiency, or handicap or an intention to make any such preference, limitation, or discrimination except where otherwise legally permitted.

Chapter 151B § 4(10) makes it unlawful:

> to discriminate against any individual who is a recipient of federal, state, or local public assistance, including medical assistance, or who is a tenant receiving federal, state, or local housing subsidies, including rental assistance or rental supplements, because the individual is such a recipient, or because of any requirement of such public assistance, rental assistance, or housing subsidy program.

Apartment Depot is responsible for placing on its website rental advertisements that indicate a preference or limitation, or that discriminate, based on children, receipt of a rental subsidy, and source of income, and that have had a disparate impact on members of protected classes based on race, color, or national origin in violation of Mass. Gen. Laws ch. 151B §§ 4(7B) & 4(10). Compl. at paras. 33-37.

The Fair Housing Center further alleges that the rental advertisements developed and placed by Apartment Depot on its website violate the Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A §§ 2 and 11, and that, through its actions, Apartment Depot has violated the common law of negligence. See Compl. at paras. 46-48.

III.  **ARGUMENT**[2]

    A.  **The Allegations Of The Complaint Establish That The Fair Housing Center Has Standing To Pursue Its Claims Against Apartment Depot**

Whether the Fair Housing Center has adequately alleged that it has standing to seek relief against Apartment Depot is squarely resolved by the U.S. Supreme Court's decision in <u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363 (1982). Because the Fair Housing Center has alleged injury and causation sufficient to satisfy Article III of the U.S. Constitution as outlined in <u>Havens</u>, it has standing to pursue this action.

"[T]he sole requirement for standing to sue under [the Fair Housing Act] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" 455 U.S. at 372; <u>see</u> <u>also</u> <u>Ragin v. Harry Macklowe Real Estate Co.</u>, 6 F.3d 898, 904 (2nd Cir. 1993) ("persons have standing to sue in federal court [under the Fair Housing Act] so long as they satisfy the case or controversy requirement of Article III"). This test applies to an organization, such as the Fair Housing Center, suing in its own right as well as to an individual. <u>Havens</u>, 455 U.S. at 378; <u>see</u> <u>also</u> <u>Ragin</u>, 6 F.3d at 904.[3] Thus, the question is "[h]as the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?" <u>Havens</u>, 455 U.S. at 378-79 (internal quotations omitted).

---

[2]     Motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim are generally viewed with disfavor by the federal judiciary because of its strong policy of determining cases on their merits. <u>Drunker v. Sullivan</u>, 334 F. Supp. 861, 863 (D. Mass. 1971). In reviewing such a motion, a court must accept the allegations of the complaint as true, "drawing all reasonable inferences in favor of the plaintiff." <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994). "[I]f under any theory, the allegations are sufficient to state a cause of action in accordance with the law," a motion to dismiss must be denied. <u>Vartanian v. Monsanto Co.</u>, 14 F.3d 697, 700 (1st Cir. 1994).

[3]     The Fair Housing Center does not bring its claims in a representative capacity. Accordingly, Apartment Depot's arguments regarding representative standing (Def. Memo. at 4-7) are not pertinent to the Court's standing analysis.

In Havens, the Court considered -- as here, on a motion to dismiss -- whether HOME,[4] a non-profit fair housing organization in Richmond, Virginia, had standing to seek relief on its own behalf under the Fair Housing Act. HOME had alleged that it had suffered injury as a result of the defendant realty company's practice of "steering" individuals to certain properties based on their race. 455 U.S. at 369. In particular, HOME alleged:

> "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's racially discriminatory steering practices."

Id. at 379. The Court determined that HOME's allegations of injury -- that were substantially similar to the Fair Housing Center's allegations in this case -- were sufficient to withstand a motion to dismiss:

> If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests …. We therefore conclude … that in view of HOME's allegations of injury it was improper for the District Court to dismiss for lack of standing the claims of the organization in its own right.

Id. The Court further noted that "[t]hat the alleged injury results from the organization's noneconomic interest in encouraging open housing does not effect the nature of the injury suffered … and accordingly does not deprive the organization of standing" (internal citation omitted). Id. at n. 20.

---

[4] "HOME" is an abbreviation for Housing Opportunities Made Equal. Havens, 455 U.S. at 366.

Here, the Fair Housing Center's allegations fall squarely within the test for standing under the Fair Housing Act as outlined in Havens. In particular, the Fair Housing Center (or "FHC") has alleged that

> 4. Plaintiff FHC is a private, non-profit, fair housing membership organization dedicated to promoting equal housing opportunities for all people in Boston and the Greater Boston area. Its constituents include, but are not limited to, persons seeking rental housing through advertisements posted on the Internet, including, but not limited to, www.bostonapartments.com, www.aandsrealty.com, www.bostonapartments.com/aptdepot, www.bostonapartments.com/roos.htm.
>
> 5. FHC devotes resources to ensure that all persons have an equal opportunity and access to housing. FHC identifies and takes actions to eliminate discriminatory housing practices through education, counseling, investigation, and enforcement.
>
> 6. FHC's mission has been frustrated by Defendants' discriminatory actions, which have the effect of sanctioning discrimination in housing. FHC has diverted and continues to divert significant resources from its usual activities to identify and counteract Defendants' discriminatory advertising practices, including, inter alia, time and resources spent investigating and monitoring Defendants' websites.

Complaint at paras. 4-6. Contrary to Apartment Depot's arguments, these allegations are sufficient to allege injury within the meaning of Article III as discussed by the U.S. Supreme Court in Havens.

Indeed, following the Havens decision, numerous courts have determined that non-profit housing organizations, like the Fair Housing Center, have standing in their own right to pursue relief when they have adequately alleged -- as the Fair Housing Center has done here -- an actionable injury, such as "a perceptible impairment of [their] ability to provide counseling and referral services, within the meaning of Article III." See Ragin, 6 F.3d at 905 (appeals court affirmed district court's decision after trial that housing organization had standing where it had established that its "activities relating to identify[ing] and counteract[ing] the Defendants'

advertising practices detracted [sic] the attention of OHC staff members from their regular tasks at the OHC"); Hooker v. Weathers, 990 F.2d 913, 915 (6th Cir. 1993) (court determined that fair housing organization had standing where it "devoted resources to investigating the defendants' practices and alleges that it has confirmed that defendants do discriminate based on familial status"); Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1526 (7th Cir. 1990) (Havens makes clear ... that the only injury which need to be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed at discrimination"); Spann v. Colonial Village, Inc., 899 F.2d 24, 28 (D.C. Cir. 1990) (Ginsburg, J.) (finding that housing organizations had standing where they alleged that "they have been 'frustrated by defendants' … practices,' which have discouraged black home buyers and renters from considering defendants' housing and required the organizations to expend additional resources to identify and dispel this discouragement"); Williams v. Poretsky Management, Inc., 955 F. Supp. 490, 494 (D. Md. 1996) ("an organization has standing under the Fair Housing Act when it demonstrates that it has: (1) devoted significant resources to identifying and counteracting the defendant's discriminatory practice: and (2) such practices have frustrated the organization's efforts against discrimination"); Saunders v. General Services Corp., 659 F. Supp. 1042, 1052 (E.D. Va. 1987) (finding standing under Havens).

    The Fair Housing Center's complaint here is more than sufficient to establish at the pleading stage that the Fair Housing Center has suffered an injury that is actionable under the Fair Housing Act. The Fair Housing Center has specifically alleged that (1) it devotes resources to ensure that all persons have an equal opportunity and access to housing, and identifies and takes actions to eliminate discriminatory housing practices through education, counseling, investigation, and enforcement (Complaint at para. 5), (2) its mission has been frustrated by the

defendants' advertisements, which are discriminatory within the meaning of the Fair Housing Act (Complaint at paras. 6, 31), and (3) it has diverted and continues to divert significant resources from its usual activities to identify and counteract the defendants' discriminatory advertising practices.  Id.

In the face of these allegations, Apartment Depot's motion to dismiss for lack of standing should be denied.  If the Court determines that the Fair Housing Center's allegations regarding standing are deficient, the Fair Housing Center requests an opportunity to amend the Complaint.

> **B.     The Fair Housing Center Has Stated A Claim Against Apartment Depot Under The Fair Housing Act; The Fair Housing Center's Claims Do Not Infringe Upon Apartment Depot's First Amendment Rights**

Apartment Depot argues that the Fair Housing Center has failed to state a claim under the Fair Housing Act, and that any such claim the Fair Housing Center may have stated violates Apartment Depot's rights under the First Amendment because its advertisements are protected commercial speech.  The allegations of the Complaint, however, plainly state a claim against Apartment Depot under the Fair Housing Act.  Any argument that Apartment Depot should not be liable must be resolved after the parties have had an opportunity to fully develop a factual record.  Moreover, as with standing, it is well established under the pertinent case law that discriminatory advertising that violates the Fair Housing Act is not protected commercial speech.  As such, Apartment Depot's Motion should be denied.

As discussed above, Section 3604(c) of the Fair Housing Act provides that

> [i]t shall be unlawful … [t]o make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference or limitation.

42 U.S.C. § 3604(c).

Under this statutory framework, the Complaint plainly states a claim against Apartment Depot.  In particular, the Fair Housing Center has alleged that Apartment Depot posts and publishes rental advertisements on its website www.bostonapartments.com/aptdepot.htm that express preferences or limitations that discriminate against persons with rental subsidies and families with children.  The advertisements include, but are not limited to, statements such as: "apartment is not deleaded," "professional building," "no security deposit required with good credit and stable employment;" "this is a professional building;" and "professional inquiries only."   Complaint at paras. 18-20.  The Fair Housing Center alleges that (1) Apartment Depot's advertisements restrict the housing choices and opportunities for families with children and persons with rental subsidies, Id. at para. 25, and (2) because a disproportionate number of persons with rental subsidies and families with children are people of color, these advertisements have had the effect of discriminating against people based on race, color and national origin.  Id.[5]

That the advertisements are posted or "made" on the Internet does not place them outside of the Fair Housing Act.   Nor does the fact that some of the advertisements are arguably subtle in their discriminatory message.[6]  The statute expressly includes advertisements that "indicate[] any preference, limitation, or discrimination based on a protected class."  42 U.S.C. § 3604(c). That the case may be one of first-impression does mean that it lacks viability.

---

[5] Courts have determined that a plaintiff may establish a prima facie case under the Fair Housing Act by establishing that a facially-neutral advertisement has a disparate impact on a protected class.  See, e.g., Fair Housing Council of Orange County, Inc. v. Ayres, 855 F. Supp. 315, 318 (C.D. Cal. 1994)

[6] Apartment Depot argues that the advertisements at issue do not discriminate against individuals in the protected classes identified by the Fair Housing Act.  Def. Memo. at 10.  However, advertisements, such as, "apartment not deleaded" clearly discriminates on its face against people based on "familial status."  Moreover, the Fair Housing Center has alleged that advertisements, such as "professionals only," have a disparate impact against individuals based on race, color, and national origin.  Complaint at para. 25.

While Apartment Depot may dispute that its advertisements are discriminatory, and more particularly, that its advertisements contain a discriminatory message against members of protected classes under the Fair Housing Act (Def. Memo. at 11),[7] that dispute is one for fact and expert witnesses. Where the allegations meet the elements of liability under the governing statute, dismissal is not appropriate, Vartanian, 14 F.3d at 700, and the claims should be resolved on the merits based on a full evidentiary record.

As a fall-back, Apartment Depot argues that its advertisements are protected commercial speech, and any attempt to impose liability against Apartment Depot based on its advertisements would violate its federal and state constitutional rights to free speech. Def. Memo. at 12. This argument is simply wrong. It is well established that the First Amendment does not protect advertising that is discriminatory within the meaning of the Fair Housing Act. Indeed, courts have repeatedly rejected First Amendment arguments raised to contest liability under the Fair Housing Act.[8]

In the seminal case addressing liability under the Fair Housing Act for discriminatory advertising, the Fourth Circuit in United States v. Hunter, 459 F.2d 205 (4th Cir.), cert. denied, 409 U.S. 934 (1972), held that application of Section 3604(c) of the Fair Housing Act to newspaper advertising does not violate the First Amendment's guarantee of freedom of the press. Specifically, the court stated that the conclusion that discriminatory advertising is not protected under the First Amendment

---

[7] The term "Def. Memo." refers to Defendant Apartment Depot's Memorandum in Support of Motion to Dismiss Complaint for Failure to State A Claim Upon Which Relief May Be Granted dated May 13, 2004.

[8] Apartment Depot concedes that the analysis under Article 16 of the Massachusetts Declaration of Rights is the same as that under the First Amendment to the U.S. Constitution. Def. Memo. at 12, citing cases including Opinion of the Justices to the Senate, 430 Mass. 1205, 1209 n. 3 (2000).

> is supported by an unbroken line of authority from the Supreme Court down which distinguishes between the expression of ideas protected by the First Amendment and commercial advertising in a business context. It is now well settled that, while "freedom of communicating information and disseminating opinion" enjoys the fullest protection of the First Amendment, "the Constitution imposes no such restraint on government as respects purely commercial advertising."

459 F.2d at 211 (quoting Valentine v. Chrestensen, 316 U.S. 52, 54 (1942) and citing other cases). The court further held that whether a particular advertisement violates Section 3604(c) is to be determined by how an ordinary reader would naturally interpret the advertisements at issue. 459 F.2d at 213.[9] This is a question that can only be resolved by the fact-finder at trial.

Numerous courts have followed Hunter and held that discriminatory advertising under the Fair Housing Act is not entitled to First Amendment protection. See, e.g., Ragin v. New York Times, 923 F.2d 995, 1000 (2nd Cir.), cert. denied, 502 U.S. 821, 112 S. Ct. 81 (1991). In Ragin, the Second Circuit held that a complaint under the Fair Housing Act against the New York Times could not be dismissed for failure to state a claim where the complaint alleged that the Times published a series of advertisements using predominately white models, which reflected a targeting of racial groups. Id. at 1001. The court rejected the Times' claim that the advertisements were protected speech and stated:

---

[9] While the advertisement at issue in Hunter involved explicit discriminatory language, courts have also held that other non-explicit forms of advertising, such as the use of virtually all white models in an advertising campaign, also run afoul of the Fair Housing Act's prohibitions. See, e.g., Ragin v. New York Times Co., 923 F.2d 995, 1000 (2nd Cir.), cert. denied, 502 U.S. 821, 112 S. Ct. 81 (1991); Spann v. Colonial Village, Inc., 899 F.2d 24 (D.C. Cir.), cert. denied, 498 U.S. 980 (1990); Saunders v. General Services Corp., 659 F. Supp. 1042 (E.D. Va. 1987) (holding advertising brochure that used almost all white models violated Section 3604(c)); Ragin v. Steiner, Clateman and Assocs., 714 F. Supp. 709 (S.D.N.Y. 1989); Ragin v. Harry Macklowe Real Estate Co., 801 F. Supp. 1213 (S.D.N.Y. 1992), aff'd in part and rev'd in part, 6 F.3d 898 (2nd Cir. 1993); Fenwick-Schafer v. Sterling Homes Corp., 774 F. Supp. 361 (D. Md. 1991) (exclusive use of white models in area with sizeable black population violated FHA). These cases have uniformly held that a plaintiff need not show that the advertiser intended to express a discriminatory preference in violation of the Act. Section 3604(c) is violated whenever an advertisement for housing suggests to an ordinary reader that a protected class is preferred or not preferred. Ragin, 923 F.2d at 1000.

> The Supreme Court has made clear that "[t]he Constitution … accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." Central Hudson Gas & Elec. v. Public Serv. Comm'n, 447 U.S. 557, 562-63 … (1980). It is the informational content of the advertising that gives rise to its First Amendment protection. "[C]ommercial messages that do not accurately inform the public about lawful activity" are unprotected. See id. The government may, therefore, ban deceptive advertising or "commercial speech related to illegal activity." Id. at 563-64….

Id. at 1002-3 (also citing Pittsburgh Press Co. v. Human Relations Comm'n, 413 U.S. 376, 378 (1973)). The Ragin court concluded that, because plaintiff had alleged that the Times' advertisements indicate an unlawful racial preference, the advertisements were not commercial speech entitled to First Amendment protection. Id. at 1003. The court further concluded that the Fair Housing Act was not void for vagueness – contrary to Apartment Depot's argument (Def. Memo. at 13), because the "ordinary reader" standard provides constitutionally adequate notice of the prohibited conduct. Id. at 1002.[10]

The Second Circuit noted in Ragin that "[w]e live in a race-conscious society, and real estate advertisers seeking the attention of groups that are largely white may see greater profit in appealing to white consumers in a manner that consciously or unconsciously discourages non-whites." 923 F.2d at 1000. Here, the Fair Housing Center has alleged that Apartment Depot's advertisements convey to individuals in protected classes that their housing choices are restricted; this "speech" is unlawful. As such, the advertisements violate the Fair Housing Act (as well as M.G.L. c. 151B and c. 93A), and are not protected commercial speech entitled to First Amendment protection.

---

[10]   Advertisements are discriminatory if they "would discourage an ordinary reader of a particular [protected group] from applying for an apartment, … or would suggest to an ordinary [reader] that people [of a particular race or national origin] are preferred or dis-preferred for the housing in question." Housing Rights Center v. Donald Sterling Corp., 274 F.Supp.2d 1129, 1137-38 (C.D. Cal. 2003).

- 14 -

### C. The Fair Housing Center Has Stated A Claim Against Apartment Depot Under The Common Law Of Negligence

Apartment Depot argues that the Complaint fails to state a prima facie claim for negligence. Because the Fair Housing Center's negligence claim is sufficiently pled, the Court should deny Apartment Depot's Motion.

The Fair Housing Center has made a prima facie case for negligence by alleging the existence of a duty, a breach of that duty, causation and damages. Swift v. United States, 866 F.2d 507, 508 (1st Cir. 1989). In particular, the Complaint states:

> 47. Defendants owe FHC a duty to operate their rental housing websites in a manner free from unlawful discriminatory statements and other discriminatory practices, and to hire, train, supervise and discipline their employees and themselves to fulfill that duty. Defendants negligently violated that duty, and continue to do so, by developing, making, publishing and re-publishing statements that are discriminatory on the basis of familial status, children, receipt of a rental subsidiary, and source of income. Defendants' violation of that duty, and FHC's resultant injuries, are the result of Defendants' negligence, including but not limited to:
>
> - Defendants' negligent failures to train their employees, members, and themselves regarding the requirements of state and federal fair housing laws;
>
> - Defendants' negligent failures to hire persons who were familiar with the requirements of state and federal fair housing laws;
>
> - Defendants' negligent failures to supervise their employees regarding compliance with the requirements of state and federal fair housing laws;
>
> - Defendants' negligent failures to operate a rental housing listing business in conformity with accepted industry custom and standards.
>
> 48. As a result of Defendants' negligence, FHC has been harmed thereby.

Complaint at paras. 47-48. These allegations are more than sufficient to allege a negligence claim. To the extent that Apartment Depot is actually arguing that the negligence claim lacks

merit, Apartment Depot's argument is premature and requires discovery and development of a factual record.

The Fair Housing Center has alleged that Apartment Depot's actions in maintaining discriminatory website advertisements has had a disparate impact on members of protected classes based on race, color, or national origin. Complaint at paras. 18-20. The Fair Housing Center has further alleged that it has suffered injury including, among other things, having to divert its resources to address that impact. Apartment Depot's failure to ensure that the advertisements posted on its web-site do not contain discriminatory content is a breach of Apartment Depot's duty to those who seek, or seek to protect, equal housing opportunities under state and federal law.

A question of negligence is usually one of fact for the jury. Foster, 26 Mass. App. Ct. at 292. It is well-settled law that negligence claims cannot be resolved on a motion to dismiss, let alone, summary judgment because "usually, the question of negligence is one of fact." Coughlin v. Titus & Bean Graphics, Inc., 54 Mass. App. Ct. 633, 638 (2002). Similarly, questions of proximate cause are issues of fact that are generally left for the jury if reasonable persons could reach different conclusions. Swift, 866 F.2d at 510-11. Because the Fair Housing Center has alleged each element of a claim of negligence, Apartment Depot's Motion should be denied and the parties should be permitted to proceed with discovery.

### D. The Fair Housing Center's Claims Against Apartment Depot Should Not Be Dismissed Where It Is A "DBA" For An Individual

Apartment Depot argues that the claims against it should be dismissed because Apartment Depot is simply a name used by an individual who is the true entity operating the business. Apartment Depot does not identify the individual operating the business, but the Fair Housing Center believes that the owner of Apartment Depot is Robert Einhorn. To the extent

that the Court deems it necessary, the Fair Housing Center respectfully requests an opportunity to amend the Complaint to add Mr. Einhorn d/b/a Apartment Depot, or the appropriate individual if it is not Mr. Einhorn, as a defendant.

## IV.     CONCLUSION

For the foregoing reasons, plaintiff Fair Housing Center of Greater Boston, Inc. respectfully requests that the Court deny Apartment Depot's Motion to Dismiss Plaintiff's Complaint.  Alternatively, plaintiff requests the opportunity to amend the Complaint as necessary.

Respectfully submitted,

FAIR HOUSING CENTER OF
GREATER BOSTON, INC.

By its attorneys,


/s/ Irene C. Freidel
Irene C. Freidel (BBO #559051)
Andrew C. Glass (BBO #638362)
Aimée E. Bierman (BBO #640385)
Jason N. Golub (BBO# pending)
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, Massachusetts 02109
(617) 261-3100

Nadine M. Cohen (BBO # 090040)
The Lawyers' Committee for Civil Rights
    Under Law of the Boston Bar Association
294 Washington Street
Suite 940
Boston, Massachusetts 02108
(617) 482-1145


Dated:  May 27, 2004

- 17 -

## CERTIFICATE OF SERVICE

I, Irene C. Freidel, hereby certify that I have this 27th day of May caused a copy of the foregoing Memorandum to be served electronically upon all counsel of record, except Michael Lennon who will be served by first-class mail.

/s/ Irene C. Freidel
Irene C. Freidel